PLANNING AND ZONING COMMISSION OF THE TOWN OF LISBON ET AL. *v.* GEORGE N. DESROSIER ET AL.
(5447)

BIELUCH, STOUGHTON and NORCOTT, Js.

Argued April 20—decision released August 16, 1988

*Mary E. Holzworth,* with whom, on the brief, was *John R. Fitzgerald,* for the appellants (plaintiffs).

*George N. Desrosier,* pro se, and *Elizabeth A. Desrosier,* pro se, the appellees (defendants), filed a brief.

STOUGHTON, J. This is an appeal by the plaintiffs from the judgment of the trial court in favor of the defendants on the second count of the plaintiffs' complaint.[1] We find error in part.

The defendants[2] are the owners of premises at 16 Oak Drive and at 26 Oak Drive, both in the town of Lisbon.

---

[1] The defendants did not appear for argument and agreed to have this court consider the case on their brief.

[2] The defendants, acting pro se, filed a "Counter Complaint" containing various factual allegations made for the recited purpose of showing that the town of Lisbon had discriminated against them. The "Counter Complaint" contained no prayer for relief and hence presented no issue for the trial court to decide. The defendants have made some reference to these

The plaintiffs, the town of Lisbon planning and zoning commission and Chris A. Hempstead, the town zoning enforcement officer, claim that the court erred (1) in concluding that 26 Oak Drive was in an R-40 zone when the evidence at trial clearly indicated that it was in an R-60 zone, (2) in its computation of the lot size requirement for a two-family dwelling at 26 Oak Drive, (3) in refusing to grant injunctive relief with respect to 26 Oak Drive when the evidence indicated a clear violation of the zoning regulations by the defendants, and (4) in refusing to grant the plaintiffs' request for attorney's fees when the evidence indicated a wilful violation of the zoning regulations.

In separate counts of their complaint, the plaintiffs sought to enjoin the defendants from interfering with the plaintiff Hempstead in the inspection of the interior of dwellings on the two premises and from utilizing them as two-family dwellings. The trial court granted the injunctive relief sought as to the first count dealing with 16 Oak Drive, and no appeal has been taken from that judgment. The trial court found the issues for the defendants on the second count dealing with 26 Oak Drive. The plaintiffs' claim for reasonable attorney's fees was also denied.

Upon the trial of this case, the court found the following facts and reached the following conclusions which are relevant to this appeal. The defendants own two properties in the town of Lisbon, known as 16 Oak Drive[3] and 26 Oak Drive, with a dwelling on each. The

allegations in their brief and appendix, but, since they did not file a preliminary statement of issues pursuant to Practice Book § 4013 (a) (1), any claim arising out of these allegations is not properly before us.

[3] In its memorandum of decision and judgment, the trial court erroneously referred to 16 Oak Drive as "40 Oak Drive." The judgment was subsequently modified to reflect the correct address. See *Martin* v. *Martin's News Service*, 9 Conn. App. 304, 306 n.2, 518 A.2d 951 (1986), cert. denied, 202 Conn. 807, 520 A.2d 1287 (1987).

property at 26 Oak Drive is to the rear of 16 Oak Drive, with a right-of-way to Oak Drive. Construction at 26 Oak Drive was commenced in 1978 but, due to failure to obtain proper permits, was not completed until 1984. A certificate of use and occupancy for a single-family dwelling in an R-60 zone was issued on June 5, 1985. Although a special permit was required to build on "flag" or rear lots having less than the required street frontage, it was undisputed that the town had waived that requirement and the defendants could legally occupy the dwelling as a single-family home.[4] It was

---

[4] Pertinent parts of the planning & zoning regulations of the town of Lisbon are as follows:

"[Section] 2.2 Zoning Permit. No building shall be erected, moved or structurally altered and no use shall be established or changed without a zoning permit from the Zoning Enforcement Officer, issued in conformance with the provisions of these Regulations."

"[Section] 4.1 Permitted Uses. The following uses are permitted by right in R-80, R-60 and R-40 districts, provided the dimensional requirements of these Regulations are met."

"[Section] 4.1.2 Two-family dwellings not to exceed one such dwelling per lot. The minimum lot area per dwelling shall be not less than 175% of the required minimum lot area for one-family dwellings."

"[Section] 4.2 Special Permits. The following uses are permitted by special permit in R-80, R-60 and R-40 Districts, provided the dimensional requirements of Section 7 and the special conditions of Section 9 are met. . . .
"[Section] 4.2.7 Flag lots."

"[Section] 7.1 Minimum lots sizes.
R-80 -  80,000 sq. ft.
R-60 -  60,000 sq. ft.
R-40 -  40,000 sq. ft.
B-1  -  40,000 sq. ft.
1P-1 - 200,000 sq. ft."

"[Section] 7.2 Minimum Street Frontage.
R-80  - 175 feet
R-60  - 150 feet
R-40  - 125 feet
B-1   - 125 feet
IP-1  - 400 feet"

also undisputed that the defendants had leased a portion of the dwelling and were using it as a two-family residence. A cease and desist order was issued on November 14, 1985, prohibiting such use.

The court found that under the Lisbon zoning regulations two-family residences are a permitted use in all residential zones, as long as the lot area is not less than 175 percent of the minimum lot area for a one-family dwelling. The requirements for a flag lot make no distinction between one or two-family residences, since both are permitted uses. There was some confusion over the zoning of the flag or rear property, because of a recent zone change and the fact that the property was in two zones, but the plaintiff Hempstead acknowledged that the defendants had been advised that the required lot size was 120,000 square feet which is three times the minimum lot required for a dwelling located in an R-40 zone.

The court further found that while the defendants were attempting to comply with the zoning requirements, members of the commission and the town government were actively seeking to prevent them from

---

"[Section] 7.2.2 Flag lots, or rear lots, having less than the required street frontage may be permitted by the Commission as a Special Permit under the provisions of Section 9 of these Regulations."

"[Section] 9.8 Flag lots. In order to provide for the development of property remote from existing roads, the Commission may permit the street frontage requirements to be reduced for such rear lots, provided the following conditions are met.

"[Section] 9.8.1 Part of such lot extends to an existing street in the form of a strip of land at least 25 feet wide capable of accommodating a safe and convenient driveway for access to the main part of the lot.

"[Section] 9.8.2 The size of the lot shall be three times the minimum lot size required for the district.

"[Section] 9.8.3 The access strip shall not exceed 1000 feet in length and shall not serve more than one lot.

"[Section] 9.8.4 The access strip shall not be located closer than 300 feet to a similar access strip on the same side of the street."

establishing a two-family residence in that neighborhood. It found that this opposition was not justified as to 26 Oak Drive because the defendants had filed a map showing more than adequate lot size and own a right-of-way sufficient to provide access, and because two-family residences are a permitted use in any residential zone on an oversized lot.

The court concluded that, although the defendants did not have a certificate of occupancy for a two-family house, that failure was due in large part to a very poor working relationship between the parties and to actions of town officials in attempting to prevent the defendants from obtaining necessary approvals. To the extent that a technical violation of the zoning regulations existed, it determined that it was not sufficiently grave or wilful to warrant the granting of injunctive relief.

I

The plaintiffs contend that because the certificate of occupancy issued for 26 Oak Drive notes that the location is in an R-60 zone, because the zoning enforcement officer testified that it was in an R-60 zone, and because only George Desrosier himself had testified that he believed that the property was in an R-40 zone, it was error for the trial court to conclude that the property was in an R-40 zone. The transcript discloses that the zoning enforcement officer was asked if he had an opinion as to what zone the property was in, and that he replied "R-60." Although it is true that the certificate of occupancy showed that the location was in an R-60 zone, the building permit introduced as an exhibit showed the location as R-60 and R-40. In addition, the plaintiffs alleged in their complaint that the premises known as 26 Oak Drive "are situated partially in an R-40 zone and partially in an R-60 zone." The trial court did not conclude that the property was in an R-40 zone,

as the plaintiffs claim, but only that, in light of the testimony that the residence itself was in an R-40 zone, it would be unreasonable and contrary to the evidence to determine the lot size requirement by using the flag lot 300 percent requirement of an R-60 zone.

"This court cannot find facts or draw conclusions from primary facts found, but can only review such findings to determine whether they could legally, logically and reasonably be found and whether the trial court could thereby conclude as it did. *Nulman's Appeal from Probate,* 13 Conn. App. 811, 812, 537 A.2d 495 (1988)." *Girgenti* v. *Cali-Con, Inc.,* 15 Conn. App. 130, 136, 544 A.2d 655 (1988). The trial court did not specifically conclude that 26 Oak Drive was in an R-40 zone. The conclusion that it would be unreasonable and contrary to the evidence to determine the lot size requirement for 26 Oak Drive by reference to the flag lot requirements for an R-60 zone was not an unreasonable one in light of the testimony and the evidence presented to the trial court.

## II

The plaintiffs also claim that the defendants did not establish that 26 Oak Drive extended to an existing street by a strip of land at least twenty-five feet wide, capable of accommodating a safe and convenient driveway for access to the main part of the lot, and thus did not qualify as a lot in Lisbon as defined in the planning and zoning regulations set forth in footnote 4, supra, because it failed to meet the requirements of § 9.8.1 of those regulations.

The defendants established that they had a right-of-way to their land, but its width was not determined. The trial court made no finding as to the right-of-way, although the defendants claimed that it was fifty feet wide and the plaintiffs produced evidence that there was a gravel road approximately ten to twelve feet wide

giving access to 26 Oak Drive. The trial court found that, although a special permit was required for a flag lot, it was undisputed that the town had waived this requirement and that the defendants legally occupy the premises as a single-family dwelling. The plaintiffs have offered no authority for their position that even though they do not challenge the right of the defendants to use the dwelling as a single-family house despite the claim that it lacks a twenty-five foot strip to an existing road, they may challenge the right of the defendants to use it as a two-family house on that basis. Furthermore, the plaintiffs have not challenged the finding of the trial court that they waived the requirement in the zoning regulations for a special permit to use a flag lot.

We find no error as to the plaintiffs' first two claims.

## III

The third claim of error made by the plaintiffs is that the trial court erred in refusing injunctive relief in light of the clear violations of the zoning regulations by the defendants.

The defendant George N. Desrosier applied for a building permit in 1978 for a single-family residence on the subject property. He did not get a permit at that time. In 1983, he applied again for a building permit for a single-family residence on the property. On April 12, 1983, a building permit was issued for a two-story one-family house on the property. The house was constructed and, on June 4, 1985, a certificate of use and occcupancy was issued approving for occupancy only the first floor of a single-family dwelling at 26 Oak Drive. No other permits have ever been sought by or issued to the defendants for 26 Oak Drive. The trial court found that it was undisputed that the defendants have leased out a portion of the premises and are using it as a two-family residence.

Although there was conflicting testimony about whether the defendants sought to comply with the zoning requirements, the trial court found that while the defendants sought to comply with the requirements as they understood them, members of the commission and the town government were actively seeking to prevent them from establishing a two-family residence in that neighborhood. The trial court was correct in finding that a two-family residence is a permitted use in any residential zone on an oversized lot. It failed to note, however, that the defendants had applied for and received permission to build a one-family dwelling and not a two-family house.

The defendants claim that the zoning enforcement officer or the town attorney told them that they could have an apartment on the second floor once they had obtained a map showing that they had sufficient lot size. They knew, however, that they had never obtained a permit to build a two-family house or a permit to convert the dwelling to a two-family house. Under the town planning and zoning regulations, no building may be structurally altered and no use may be established or changed without a zoning permit. General Statutes § 8-12 was enacted to provide local zoning enforcement officers with a means of enforcing their zoning regulations, and it provides that the zoning enforcement officer may seek injunctive relief to prevent unlawful use of a building. *Johnson* v. *Murzyn,* 1 Conn. App. 176, 179, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984).

The general rule is that "a municipality cannot be estopped by the unauthorized acts of its officers or agents. *Zoning Commission* v. *Lescynski,* 188 Conn. 724, 733, 453 A.2d 1144 (1982); *Dupuis* v. *Submarine Base Credit Union, Inc.,* 170 Conn. 344, 352, 365 A.2d 1093 (1976); *Carini* v. *Zoning Board of Appeals,* 164

Conn. 169, 174, 318 A.2d 390 (1972), cert. denied, 414 U.S. 831, 94 S. Ct. 64, 38 L. Ed. 2d 66 (1973); *Hebb* v. *Zoning Board of Appeals,* 150 Conn. 539, 542, 192 A.2d 206 (1963)." *Greenwich* v. *Kristoff,* 2 Conn. App 515, 522, 481 A.2d 77, cert. denied, 194 Conn. 807, 483 A.2d 275 (1984). A municipality can only be estopped by erroneous acts of its officers from enforcing its zoning ordinances, when those officers act within the scope of their authority. *West Hartford* v. *Rechel,* 190 Conn. 114, 121, 459 A.2d 1015 (1983). Estoppel may be invoked in municipal zoning cases "(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agent having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations." (Citations omitted.) Id. George Desrosier testified during the trial of this case that he is a builder and that he had obtained building permits on other occasions. He knew or should have known, therefore, of the zoning regulations and that a permit was required in order to alter a building or to change a use.

The defendants were served with an order directing them to cease and desist from using 26 Oak Drive as a two-family residence on November 19, 1985. The defendants have ignored this order. General Statutes § 8-12 authorizes the zoning enforcement officer to order in writing the remedy of any condition found to exist in violation of the zoning regulations. The defendants could have appealed the cease and desist order to the zoning board of appeals, but they did not do so. *Greenwich* v. *Kristoff,* 180 Conn. 575, 578, 430 A.2d 1294 (1980). Because the defendants have failed to comply with a valid order which they did not challenge, the trial court should have granted the injunctive relief sought in the second count of the complaint.

## IV

Finally, the plaintiffs claim that the trial court erred in refusing to grant their request for attorney's fees pursuant to General Statutes § 8-13. That section provides, in part, that if the court renders judgment for the municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. The only finding made by the trial court on wilfulness was that the conduct of the defendants with respect to their failure to obtain a certificate of occupancy for 26 Oak Drive as a two-family home was not sufficiently grave or wilful to warrant the granting of injunctive relief.

What constitutes wilful misconduct is a question of fact. *Gonier* v. *Chase Companies, Inc.,* 97 Conn. 46, 57, 115 A. 677 (1921). Although the trial court might have found from the evidence that the conduct of the defendants was openly defiant of the zoning authorities, it was not required to do so. It is apparent that the trial court concluded that the violation was not wilful in that sense, but resulted from poor judgment on the part of the defendants. We cannot find that this conclusion was erroneous under the circumstances. There is no error as to this claim.

There is error in part, the judgment denying the injunctive relief sought in the second count of the complaint is set aside and the case is remanded with direction to grant that relief.

In this opinion the other judges concurred.