[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
FACTS
The plaintiff, Douglas Balfour, is herein appealing from the decision of the defendant, East Granby Planning and Zoning Commission, CT Page 6793 which denied his application for approval of a two-lot resubdivision.
The plaintiff owns a 6.2 acre parcel of land known as Lot No. 4 in the Woodledge Subdivision in East Granby, Connecticut. Lot No. 4, the subject of this appeal, is a portion of a 32 acre parcel which the plaintiff acquired in 1980. On said 32 acre parcel is a private road (Parcel A or Woodledge Road) that was built by the previous owner I without town approval. Parcel A intersects Newgate Road, which is a state road. Parcel A did not conform to the defendant's subdivision regulations in that the gradient was in excess of the maximum gradient allowed by the regulations. Consequently, Parcel A has not been accepted as a dedicated town street. In 1981, the defendant approved the plaintiff's application for the subdivision of his 32 acre parcel into four lots. Lot 1 was set out as 5.10 acres; Lot 2 was 8.47 acres; Lot 3 was 3.71 acres; Lot 4 was 13.00 acres; and Parcel A consisted of 1.64 acres. As part of the 1981 subdivision approval the plaintiff agreed to a notation (note 6) on the subdivision map which notation stated, "The maximum number of dwelling units or lots to be served by Parcel A (the private road) is four."
In 1988, the plaintiff applied to the defendant for a resubdivision of a portion of Lots 1 and 4 into a new 9.7 acre lot designated as Lot 5. At that time there were adverse claims to the 9.7 acre portion and the plaintiff wanted to separate that portion, thus enabling him to sell the other lots. Because of these special circumstances, the defendant approved the resubdivision but modified note 6 on the subdivision map by increasing the maximum number of dwelling units or lots to be served by Parcel A from four to five. (The 9.7 acre parcel, however, was never designated on the subdivision map as Lot 5.) Also at that time it was discovered that three lots abutting Parcel A had deeded rights of way to obtain access to and to use parcel A, which rights of way had been granted in the 1950's. As a result, three notes (7, 8, and 9) were added to the subdivision map indicating that three additional lots (which three lots are not part of the Woodledge Subdivision but which are shown on the 1981 subdivision map and the 1988 resubdivision map) have rights of way to obtain access to and use Parcel A. The three lots are designated on the maps as "N/F Cecile Fehrenbach," "N/F Rita A. and Ernest D. Chagnon, III," and "N/F Mary L. Percival."
In June, 1989, the plaintiff applied to the defendant for permission to resubdivide Lot No. 4 into Lot 4 having 3.67 acres and Lot 5 having 2.73 acres. The public hearing was held on July 25, 1989, and was continued to September 26, 1989. At its October 3, 1989 regular meeting, the defendant voted 4 to 2 to deny the plaintiff's application. The defendant never explicitly stated the reasons for denying the plaintiff's application. The minutes of the October 3, 1989 meeting only state, "Among the items discussed were lots affecting downward neighbors, road consideration and the number of lots." (Record #20, p. 4). However, in a certified letter dated October 6, 1989, the CT Page 6794 defendant advised the plaintiff that his application had been denied, stating, "Among the main concerns of the Commission was the comment 2b in the Charles Francis letter dated 6/29/89.[1] [Record #5; see also, Footnote No. 1, infra.] As part of the original approval you agreed to accept the limited density and a note to this effect was added to the maps." (Record #11). On October 12, 1989, the defendant published its legal notice denying the plaintiff's application. On October 27, 1989, the plaintiff served the defendant with process and filed this appeal pursuant to Conn. Gen. Stat. 8-28, 8-8.
A party taking an appeal must do so by commencing service of process within fifteen days from the date that; notice of the decision was published. Conn. Gen. Stat. 8-8 (b) (rev'd to 1990). The defendant's decision was published on October 12, 1989, and the plaintiff commenced service of process on October 27, 1989. The plaintiff commenced his appeal in timely fashion.
AGGRIEVEMENT
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board 203 Conn. 317 321 (1987). An owner of the subject property of a subdivision application is aggrieved and entitled to bring an appeal. Bossert Corp. v. Norwalk,157 Conn. 279, 285 (1968). The plaintiff is the owner of the property which is the subject of this appeal. [See Plaintiff's Exhibit A, Certificate of Title and Warranty Deed.]
The plaintiff is statutorily aggrieved pursuant to Conn. Gen. Stat. 8-8 (a)(1).
 WHETHER THE DEFENDANT ACTED ILLEGALLY ARBITRARILY OR IN ABUSE OF ITS DISCRETION IN DENYING THE PLAINTIFF'S JUNE 1989 SUBDIVISION APPLICATION
The plaintiff has the burden of proof in challenging the commission's decision. Red Hill Coalition v. Conservation Commission,212 Conn. 710, 718 (1989). A trial court is not at liberty to substitute its judgment for that of the local authority when acting within its prescribed legislative powers. Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73 (1988). The local authority's action is subject to review by the court only to determine whether it was illegal, arbitrary or an abuse of its discretion. Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152 (1988). The court determines whether the record reasonably supports the conclusions reached by the commission. Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989). The commission's action should be sustained if any one of the stated reasons is sufficient to support the action Primerica, supra. Where, however, the commission has not provided the reasons for its action, the court must review the record to determine a basis for the action taken. CT Page 6795 A.P. W. Holding Corp. v. Planning Zoning Board, 167 Conn. 182,186 (1974).
The plaintiff claims in his complaint and supporting memorandum of law that his resubdivision fully complies with the defendant's subdivision regulations and all statutory provisions regarding subdivision, and that the defendant's concern regarding potential traffic safety is unfounded since there is no evidentiary or documentary support for said concerns. The defendant also contends that the plaintiff's resubdivision application did not conform to its subdivision regulations.
A commission has no discretion or choice but to approve a subdivision which conforms to the regulations. Langbein v. Planning Board, 145 Conn. 674, 679 (1958). Conversely, if the subdivision plan does not conform to the regulations the plan must be disapproved. Westport v. Norwalk, 167 Conn. 151, 158 (1974).
The defendant never stated its reasons for denying the plaintiff's application. A fair reading of the record and the transcript of the public hearing on the plaintiff's resubdivision application indicates, however, that the defendant rejected the plaintiff's application because: (1) Parcel A exceeds the maximum gradient allowed by subdivision regulation section 6.33; (2) concerns were raised about public health or safety in that the gradient of Parcel A where it intersects Newgate Road exceeds the maximum gradient permitted by section 6.33; and (3) the plaintiff had agreed in the original subdivision approval to keep the subdivision low density and had agreed to the restrictive notation.
 I
Section 6.33 of the subdivision regulations provides in pertinent part as follows:
VERTICAL DESIGN CRITERIA:
 All roads shall be designed and constructed with a minimum grade of 1 per cent and a maximum grade of 8 per cent. In cases of extreme topography, the commission may allow a maximum grade of 10 per cent.
 At all changes in grades a vertical curve shall be provided. The minimum length of vertical curve required shall be that which will provide a minimum non-passing, stopping sight distance of 200 feet. The latest criteria of the American Association of State Highway Officials shall be used in designing vertical curves.
It is undisputed that Parcel A does not conform to section CT Page 6796 6.33. In fact, the plaintiff admits that Parcel A does not comply with the defendant's subdivision regulations. (Plaintiff's Brief, pp. 5 11). The plaintiff, however, contends that section 6.33 does not apply to Parcel A because Parcel A is not a public street, as defined in section 2.13 of the subdivision regulations, dedicated to and legally accepted for public travel by the Town of East Granby, and that the subdivision regulations only apply to public streets.
The defendant is empowered to enact subdivision regulations pursuant to Conn. Gen. Stat. 8-25, which states in pertinent part as follows:
 The commission shall adopt regulations covering the subdivision of land . . . Such regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety . . .that the proposed streets are in harmony with existing or proposed thoroughfares/shown in the plan of development as described in section 8-23, especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs . . . . (Emphasis added.)
Section 6.33 of the defendant's subdivision regulations states that "all roads shall be designed and constructed . . . ." (Emphasis added). A fair reading of section 6.00 (Design Standards) through section 6.96 of the subdivision regulations indicates that the street design standards relate to "proposed streets or roads within a subdivision and are concerned with safety and the preservation of the subdivided land's natural features. See, e.g., sections 6.10-6.14 (Preservation of Natural Environment); sections 6.30-6.33 (Street Design); section 6.50-6.53 (Regrading, Erosion and Sedimentation Control Standards). As defined in the defendant's subdivision regulations, a "proposed" street or road may be a cul-de-sac — section 2.02; a local street — section 2.08; a principal street — section 2.10; a street — section 2.13; or an easement — section 2.05. All of the design standards apply to proposed streets within a subdivision.
Parcel A is a private road within the Woodledge Subdivision, and it is designated on the proposed, and later approved, subdivision map as the road to service the property which was the subject of subdivision in 1981 and resubdivision in 1988. (ROR #17, 21). As note 6, Parcel A is shown on the plaintiff's 1989 proposed resubdivision map as the private road to service Lot 5, which is the subject property of subdivision. (ROR #13). Therefore, Parcel A is a "proposed street" within the meaning of Conn. Gen. Stat. 8-25; and section CT Page 6797 6.33 of the defendant's subdivision regulations applies to Parcel A. Since substantial evidence indicates that Parcel A was not designed and constructed in conformity with the gradient standards of section 6.33, this court finds that the defendant could on that basis have reasonably denied the plaintiff's resubdivision application.
The plaintiff next claims that there is no evidentiary or documentary evidence to show that the addition of the proposed Lot 5 would cause the intersection of Parcel A and Newgate Road to be a danger to public health or safety. The plaintiff testified at the public hearing that he had improved the sight lines at the intersection by cutting back bushes and shrubs and installing a street light, at his own expense; and that the sight lines along Newgate Road were 270 feet to the north and 700 feet to the south. (Section 6.32(8) of the subdivision regulations requires sight lines of 250 feet along both directions of the intersected road.) The plaintiff also testified that he had placed cautionary street signs on Parcel A at his own expense, that Parcel A is well plowed and sanded in the winter, and that there have never been any police reports of any accidents at the intersection.
The record reveals, however, that there were concerns about the accuracy of the Newgate Road sight lines, and concerns about the Parcel A sight lines and stopping distances because of its steepness. (ROR #16, pp. 10-11).
 III
The plaintiff also argues that since the defendant had approved the plaintiff's two previous subdivision applications, the defendant had found the intersection to be safe and, absent any contrary evidence, it is still safe. The plaintiff bases his argument — that the defendant found the intersection to be safe at the time it approved the original subdivision — on section 1.21 (General Standards) of the subdivision regulations, which section provides as follows:
 Land of such geophysical nature that, in its present state, presents serious difficulties for development due to danger to the public health or safety can be acceptably subdivided only with the strictest conformity to the design standards and specifications contained in these regulations. Subdivision plats which are not in conformity with these criteria cannot be approved.
The plaintiff claims that since Parcel A did not comply with section 6.33 and no subdivision can be approved unless there is strict conformity to design standards, then it must be concluded that the defendant had found the intersection to be safe because the defendant had approved the original subdivision. CT Page 6798
As mentioned previously, the defendant in denying the plaintiff's application discussed "road consideration" (ROR #20, p. 4) and referred the plaintiff to comment 2b in the Charles Francis letter, which comment mentions "a large acreage, few lot project creating little traffic."[1] (ROR #5 — paragraph 2 of Francis letter, especially the I last sentence therein; see also supra note 1). The plaintiff admits that the slope of Parcel A at the point of intersection exceeds 10 percent. Section 6.33 of the defendant's subdivision regulations allows proposed street or road grades only up to 10 percent. A similar subdivision regulation regarding street grade standards was discussed in Blakeman v. Planning Commission, 152 Conn. 303 (1965), wherein the court stated as follows:
 This standard, however, applies to a "local street" only and is not binding on the defendant in its determination of the safety of an intersection. The conditions which might make an intersection unsafe are many and varied. No one standard could ever be adopted to cover adequately all future cases. Judgment and experience must be applied in each instance, and an administrative agency such as the defendant may act upon its own knowledge and observation, as well as the evidence presented to it at a hearing. Blakeman, supra, at 307. (Emphasis supplied).
The defendant could have concluded that the addition of one more lot would adversely increase traffic at the intersection and thus pose a danger to public health and safety. In view of the steepness of Parcel A, the concerns about the sight lines and about stopping distances on Parcel A, the questionable accuracy of the plaintiff's testimony regarding sight lines on Newgate Road, and the defendant's own knowledge and observations of the intersection, the defendant could have reasonably reached such a conclusion as to such a danger to public health and safety.
 The essential question, in any case, is whether any one of the several reasons which may be given . . .[for the commission's decision] is reasonably supported. Courts do not substitute their own judgment for that of the commission so long as honest judgment has been reasonably and fairly exercised after a full hearing.
Young v. Town Planning Zoning Commission, 151 Conn. 235, 245
(1963) (Emphasis supplied).
 IV
The plaintiff contends that the notation on the 1988 map concerning the then-discovered deeded access rights to Parcel A from the Fehrenbach, Chagnon, and Percival lots had the effect of CT Page 6799 nullifying the restrictive notation contained in note 6. The plaintiff claims that note 6 is nullified because, although note 6 limits to five the number of lots to be served by Parcel A, the approved map in fact shows eight lots with use and access rights to Parcel A.
The court need not address the plaintiff's claim that note 6 is nullified by the notation on the map of the deeded rights to Parcel A from the three other lots. The plaintiff has not provided any legal authority or legal analysis in support of this claim. See State v. Hernandez, 204 Conn. 377, 382 (1987); State v. Ramsundar,204 Conn. 4, 16 (1987); and State v. Fiocchi, 17 Conn. App. 326, 327
n. 3 (1989). Accordingly, the court declines to address this claim.
The plaintiff also argues that the defendant arbitrarily and capriciously limited the subdivision to five lots when it denied plaintiff's 1989 application to add a sixth lot, and that the defendant made the limitation without any authority based on, its regulations. However, the plaintiff is not contesting the enforceability of the limitation.[2] (See Footnote 2, infra); and see also, Transcript of Court Hearing, p. 12, December 4, 1990). Rather, the plaintiff urges that the defendant waived the restrictive notation limiting the number of lots to five when the defendant approved the plaintiff's previous 1988 resubdivision application.
The plaintiff cites Planning Zoning Commission v. Desrosier,15 Conn. App. 550 (1988), for the proposition that the defendant waived the restrictive notation. Plaintiff's reliance on Desrosier is misplaced. In discussing waiver, the Appellate Court stated that "the plaintiffs have not challenged the finding of the trial court that they waived the requirement in the zoning regulations for a special permit to use a flag lot." Desrosier, supra, at 557 (Emphasis added). There is no indication in Desrosier as to how and why the trial court had found a waiver to exist; and the safety of the accessway servicing the flag lot was not an issue addressed by the Appellate Court. Desrosier, supra.
In the instant case, the record reveals that the defendant has always been concerned with the safety of Parcel A, the safety of the intersection of Parcel A and Newgate Road and the number of lots Parcel A could safely serve. (ROR #5; ROR #15, pp. 2, 3 and 4; ROR #16, pp. 4-8, 10-12; ROR #17 21). In 1981, the defendant approved the plaintiff's original subdivision application with the condition that Parcel A serve four lots only. (ROR #21). Because the defendant, had concerns about the safety of Parcel A, the condition was added I to the subdivision map in order to keep the subdivision limited to a few lots thus creating little traffic.[1] (ROR #5; see infra, footnote 1). CT Page 6800
Because of the unique geophysical nature of Parcel A, the condition or restrictive notation originally contained in note 5 (now note 6) on the subdivision map bears a rational relationship to the enumerated health, safety and public welfare considerations set forth in General Statutes 8-25"[3] (See footnote 3, infra). See also, Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303, 311 (1988) and footnotes 3 and 7 therein. The question is whether the defendant's approval of the plaintiff's 1988 resubdivision was proper in that circumstances or changes had occurred between 1981 and 1988, which would have allowed the defendant to overrule the four-lot condition in the 1981 application.
Ordinarily, an administrative agency cannot reverse a prior decision unless there has been a change of conditions or other considerations have intervened which materially affect the merits of the matter decided. Malmstrom v. Zoning Board of Appeals,152 Conn. 385, 390-91 (1965). The principle applies, however, only when the subsequent application seeks substantially the same relief as that sought in the former. Fiorilla v. Zoning Board of Appeals, 144 Conn. 275,279 (1957).
When the plaintiff had applied for his 1988 resubdivision he had done so because there had been at that time adverse claims to a 9.7 acre portion of Lots 1 and 4. Said adverse claims had prevented the plaintiff from selling or developing his lots. (Transcript of Court Hearing, p. 14, December 4, 1990).
The record reveals that the defendant in 1988 had been aware of the 1981 situation and of the reason in 1981 for imposing the conditions: the safety of the intersection by keeping a low amount of traffic to and from the subdivision. (ROR #5; ROR #15, p. 4; ROR #16, p. 4; see also Transcript of Court Hearing, pp. 14-18, December 4, 1990). Nonetheless, the defendant had approved the plaintiff's 1988 resubdivision application because of the adverse claims but had changed the lot restriction to five. (ROR #17; Transcript of Court Hearing, p. 18, December 4, 1990). The adverse claims were other intervening considerations which materially affected the merits of the matter decided, i.e., limiting the lots to four. Therefore, the defendant had `justification and good cause' for changing the lot restriction from four to five. See Carlson v. Fisher, 18 Conn. App. 488, 499, n. 7 (1989) (citations omitted).
For the foregoing reasons, the court finds that the plaintiff has failed to meet his burden of proving that the defendant acted illegally, arbitrarily or in abuse of its discretion. Accordingly, the plaintiff's appeal is dismissed.
By the Court, Doyle, J. CT Page 6801
FOOTNOTES