The plaintiffs seek a preliminary injunction requiring the defendant to cease and desist from maintaining a pigsty and keeping a pig at her residence at 20 Redcoat Lane in Guilford. Plaintiff John M. Brogden, director of health of the Town of Guilford, asserts that the keeping of a pig in the location at issue violates the public health code. Plaintiff Merton W. McAvoy, Guilford's zoning enforcement officer, asserts that the maintenance of a pigsty and keeping of a pig violates the zoning regulations limiting the uses allowed in the zone in which 20 Redcoat Lane is located.
Both plaintiffs claim that they issued enforcement orders to the defendant, Deborah Gallagher, and that she has failed to comply with those orders and has filed no timely administrative appeals from them.
Ms. Gallagher claims that the housing of a pet pig, known as Dolly, is not violative of any clear and applicable regulatory provision.
The procedural history of the controversy is as follows.
After receiving a complaint from an abutting property owner, plaintiff Brogden asked the town sanitarian, Barbara Fredericks, to investigate the reported keeping of a pig weighing about six hundred pounds in a pen at Redcoat Lane. Ms. Frederick visited the area and, without actually measuring, ascertained that the pigsty was within 300 feet of occupied residences. After inspecting the pig and the surrounding area, Ms. Fredericks prepared for Dr. Brogden's signature a document titled Notice of Violation, which she sent by certified mail on May 30, 1991 to "Deborah H. Whittaker, 20 Redcoat Lane, Guilford, Conn." Ms. Fredericks directed the notice to "Deborah H. Whittaker" after finding that the town's tax records so identified the record owner of 20 Redcoat Lane. Ms. Gallagher, who had changed her name upon the dissolution of her marriage, did not pick up the certified letter because she had decided not to respond to mail addressed to her former name. Upon noticing the absence of a record of delivery to the owner of the property, Ms. Fredericks hand-delivered the notice to 20 Redcoat Lane on June 11, 1991, leaving it in the screened side door. Ms. Fredericks also left a message on Ms. CT Page 5663 Gallagher's answering machine requesting that Ms. Gallagher call concerning the notice. Ms. Gallagher did so on July 11, 1991, and said, among other things, that she intended to file an appeal from the enforcement notice and was going to see a lawyer the next day. The notice of violation, which Ms. Gallagher received on June 11, 1991, identifies the public health law violation as "keeping of a pig in a residential area creating a public health nuisance to nearby residents." The notice identifies the following as "law violations": Conn. Public Health Code 19-13-B1(c)(d), 19-13-B2 (a)(b), 19-13-B23, and cities further numbered provisions as "authority" and "penalty." The notice states the following under the heading "Appeal":
 Any person aggrieved by an order issued by a town, city or borough director of health may, within forty-eight hours after the making of such order, appeal to the commissioner of health services, who shall thereupon immediately notify the authority from whose order the appeal was taken, and examine into the merits of such a case, and may vacate, modify or affirm such order. (NOTE: The appeal to the commissioner must be delivered by hand or by mail to the office of the commissioner within the forty-eight hours or a telephone call must be made to the office of the commissioner within the forty-eight hours with notification of the intent to appeal, followed by a letter of appeal.)
The notice stated that the violation was to be corrected on or before June 7, 1991. (Ex. A).
On June 12, 1991, Mark Gersz, an attorney, contacted Ms. Fredericks on the defendant's behalf stating that he was considering representing Ms. Gallagher and asking the text of the provisions of the public health code cited in the enforcement order.
Ms. Fredericks called Attorney Gersz's office on June 13, 1991 and left word reminding him that any appeal should be filed not with the Guilford Director of Public Health but with the state department of health services. The court finds that, although there was some correspondence from Attorney Gersz stating an intention to file an appeal, Ms. Gallagher did not file an appeal with the state department of health services within forty-eight hours after her actual receipt of the notice of violation on June 11, 1991, but called the department of health services on October 1, 1991. On October 11, 1991, the Commissioner of Health Services, Susan S. Addiss, issued a decision denying the appeal as untimely, after finding that Ms. Gallagher had received the enforcement order on June 11, 1991.
With regard to the zoning enforcement order, the court finds that in late May 1991, plaintiff McAvoy told the defendant that CT Page 5664 the keeping of a pig was prohibited except on farms. He indicated that she could apply for a zoning variance. She did so, and the application was denied.
On August 22, 1991, Ms. McAvoy sent the defendant a cease and desist order headed "Re: Farm Animal Kept on a Residential Lot, 20 Redcoat Lane, Guilford, R-5 Zone." The letter contained the following message:
 As you are aware, the Zoning Board of Appeals denied your application for a variance to permit keeping a farm animal (a pig) on your residential lot. This decision was made at the Zoning Board of Appeal's [sic] meeting held June 26, 1991.
 The appeal period for this decision has passed and the farm animal remains on your lot in violation of Section 32.3.4 of the Zoning Regulations.
It is my duty to direct that said farm animal be removed.
 A ten- (10-) day period, commencing upon receipt of this letter, is given in which to comply with this order. Your failure to comply shall result in further enforcement action.
No appeal was taken from this cease and desist order.
At the commencement of the hearing as to the plaintiffs' application for injunctive relief, the defendant filed a pleading titled "Motion to Strike Complaint and for Judgment on the Merits." The motion itself listed no grounds for striking the complaint but referred the court to arguments set forth in an accompanying brief. Having determined that the arguments made in that brief were addressed to the issue of the plaintiffs' likelihood of success on the merits, and factually-based defenses of the defendant, the court heard evidence as to the asserted defenses in conjunction with its hearing on the plaintiffs' application.
Standard of Review
As to his claim of violation of the public health code, plaintiff Brogden urges that the court's review of the application for injunctive relief is severely limited because of the defendant's failure to exhaust her administrative remedy via a hearing pursuant to C.G.S. 19a-229 and administrative regulation 19-2a-34
(b). Specifically, the health director argues, without citation, that where a respondent charged with a violation of the public health code fails to exhaust administrative remedies, "[t]he only issues properly before this Court are, did the Director of Health, pursuant to his duties as authority, cite the defendant for a violation of the Public Health Code, did the Director issue an order CT Page 5665 seeking abatement of that violation order and is the defendant still in violation of that order." Though espousing a narrow view of relevant evidence, Brogden in fact offered evidence as to the investigation and subsequent findings concerning the housing of the pig, as did the defendant. The court heard a full description of the siting and condition of the pigsty and pig at the time of the initial complaint in May 1991, at times subsequent, and after extensive steps taken by the defendant to remove any odors or conditions conducive to generation of flies or flow of waste water. The court received detailed testimony in this regard from the defendant and Dr. Bruce Sherman, a veterinarian employed by the State Department of Agriculture, who examined the pig and its environs at defendant's request.
A town's director of health is authorized by 19a-206 to cause "nuisances" to be abated and to seek injunctive relief to require the abatement of a nuisance. The same statute provides that any owner who maintains a property in a manner which violates the provisions of the public health code enacted pursuant to 19-36 and 37 "shall be deemed to be maintaining a nuisance or source of filth injurious to the public health."
In his first amended complaint, the director of health claims that three violations of the public health code result from the defendant's keeping of a pig on her property:
 1. a violation of 19-13-B1(c), which declares a public nuisance "hogpens . . . so maintained as to be a breeding place for flies;"
 2. a violation of 19-13-B1(d), which declares a public nuisance "the discharge or exposure of sewage, garbage or any other organic filth into a public place in such a way that transmission of infective material may result thereby;"
 3. a violation of 19-13-B23(a), which provides that "[n]o pigsty shall be built or maintained . . . within three hundred feet of any inhabited house . . . upon property other than that of the proprietor of the pigsty."
The general standard for issuance of a temporary injunction is that the applicant must show: (1) probable success on the merits of the claim; and (2) that the harm to the movant from denial will exceed the harm to the defendant from issuance. Griffin Hospital v. Commission on Hospitals and Health Care, 196 Conn. 451457 (1915), citing Olcott v. Pendleton, 128 Conn. 292, 295
(1941). The Court in Griffin Hospital, supra, at 488, also cited with approval Covenant Radio Corporation v. Ten Eighty Corporation,35 Conn. Sup. 1, 3 (1977), which enumerates as additional requirements for temporary injunctive relief; (3) irreparable CT Page 5666 injury; and (4) lack of an adequate remedy at law.
Where the applicant is an administrative officer charged with enforcement of a code enacted to protect the public and authorized by statute to seek injunctive relief in aid of enforcement, the officer is not required to prove irreparable harm or the unavailability of an adequate remedy at law before obtaining an injunction, rather all that must be shown is a violation of the regulatory provision. Farmington v. Viacom Broadcasting, Inc., 10 Conn. App. 191,197 (1987), cert. denied, 203 Conn. 808 (1987) Greenwich v. Kristoff, 2 Conn. App. 525, 521, cert. denied,194 Conn. 807 (1984).
The public health director failed to prove a violation of either 19-13-B1(c) or (d). While Dr. Brogden and Ms. Fredericks reported conditions conducive to flies on two occasions, the evidence indicated that the defendant has undertaken a dramatic improvement in the level of maintenance such that Dr. Sherman noted no such condition on two inspections. The plaintiff did not produce evidence that waste from the pig was discharged into a "public place," as described in 19-13-B1(d).
The health director did, however, establish that the pigsty was located within three hundred feet of inhabited houses other than that of "the proprietor of the pigsty." A map of the vicinity indicates that three inhabited homes are located within three hundred feet of the pigsty, at 50 Mirror Lane, 308 Mirror Lane, and 296 Mirror Lane.
The defendant produced agreements dated June 3, 1992, by which the residents of two of these houses agreed "to be a proprietor of Dolly" (Ex. 7 and 8). The agreement did not make them proprietors of the shelter in which the pig is housed and provided that Ms. Gallagher "shall be the chief proprietor and shall have sole and exclusive responsibility for Dolly's care and upkeep." The vicinity map indicates that there is one additional residential property, at 27 Redcoat Lane, within 300 feet of the pigsty, however the movant did not prove that the house itself is within the specified distance.
The defendant asserts that the pig's shelter cannot accurately he called a "pigsty," citing a dictionary definition that defines a pigsty as a shelter for "pigs," in the plural. The court finds that whether there is one or more than one pig housed in a pen or shelter, a place where a pig is kept is a pigsty. The Random House Dictionary of the English Language, Unabridged (1966), defines "pigsty" as a "pigpen."
The defendant further asserts that the movant offered no direct evidence to prove that the houses within 300 feet of the pigsty are CT Page 5667 "inhabited houses," as specified in 19-13-B23(a). Her own identification of her neighbors at trial supports an inference that all three houses are inhabited.
The court finds that the director of health has made the requisite showing that the defendant is in violation of the public health code and that a temporary injunction is warranted. Though he has also requested imposition of civil penalties for failure to comply with his enforcement order, only the application for a preliminary injunction is now before the court.
In balancing the equities, the court finds that the need of the applicant to enforce the applicable public health regulation outweighs the interest of the defendant in keeping a pig as a pet in violation of that provision.
The defendant is hereby enjoined from maintaining a pigsty on her property at 20 Redcoat Lane, Guilford, and shall cease this use of her property on or before July 24, 1992. Civil penalties in the amount of $250.00 per day will be imposed for each day after July 24, 1992, that the defendant fails to comply with this order.
The court finds it inconceivable that a pig could be maintained on a property without a pigsty; however, because the above injunction may be thought to leave open the issue of the maintenance of a pig, as opposed to a pigsty, at 20 Redcoat Lane, it is necessary to reach the claims of the other plaintiff, Guilford's zoning enforcement officer, Merton McAvoy. This plaintiff asserts, at Count Two of the amended complaint, that the keeping of a pig at 20 Redcoat Lane is a violation of the zoning regulations of the Town of Guilford "in that such use is not permitted in the R-5 zone unless on a farm."
The standard for the granting of a preliminary injunction as to a zoning enforcement action brought by a public officer charged with enforcement of local zoning laws is as set forth above. Additionally, the Connecticut Supreme Court has ruled in the context of zoning enforcement actions that a property owner who fails to exhaust administrative remedies may not raise for trial de novo in an injunction action the defenses that should properly have been subjected to exhaustion of administrative remedies. Town of Greenwich v. Kristoff, 180 Conn. 575, 578 (1980). The claim of the defendant in Kristoff was a factual claim that the contested use was a prior non-conforming use and therefore permitted. The court barred consideration of that defense but did not suggest that due process challenges to the sufficiency of notice, the validity of the notice, or other such issues were precluded because of failure to exhaust an administrative appeal. In Planning and Zoning Commission v. Desrosier, 15 Conn. App. 550, 559 (1988), the Appellate Court stated that an injunction in aid of enforcement CT Page 5668 should have been granted "[b]ecause the defendants have failed to comply with a valid order which they did not challenge," indicating that the validity of the order would be an issue not subject to the exhaustion doctrine.
The zoning enforcement officer made the requisite showing that the defendant's maintenance of a pig is in violation of the town's zoning regulations. Article II, District Use Requirements, Section 21, Residential Districts, Section 213, Permitted Uses, provide in applicable part that lots in the residential district shall be "used only for those uses listed as permitted in Table #2A . . . ." Farms are permitted in the R-5 zone in which 20 Redcoat Lane is located, and pigs are permitted on farms, however a "farm" is defined at 2.13 of the zoning regulations as "[A] lot or lots of contiguous land containing at least three acres on which the land and buildings are devoted to farming and such other uses as are accessory thereto."
The defendant's lot is not three acres.
"Accessory uses" are permitted in the R-5 zone in which the defendant's property is located. "Accessory uses" is defined at 2.52 of the zoning regulations as uses "subordinate to and customarily incidental to the principal use of such lot, building or structure." Mr. McAvoy testified that he has not, in twenty years as zoning enforcement officer, encountered another pig on a residential lot in Guilford other than a farm. No evidence to the contrary was introduced. The court finds that the maintenance of a full grown pig in a pigsty is not a use customary or incidental to residential uses in Guilford's R-5 zone.
The defendant claims that injunctive relief cannot be granted because the enforcement order issued by Mr. McAvoy was insufficiently clear, in that it invoked 32.3.4 of the zoning regulations. That provision states that a maximum of five pigs can be kept on a farm under certain conditions. While this phrasing of the violation was somewhat oblique, the enforcement letter (Ex. J), as a whole, made it clear that the issue was the keeping of a pig on a residential lot. The letter refers to Ms. Gallagher's unsuccessful application for a variance "to permit keeping a farm animal (a pig) on your residential lot", and the court finds that the notice was, as a whole and in context, adequate to advise the defendant of the position of the zoning enforcement officer that the maintenance of the pig in an R-5 zone was illegal.
The clarity of the cease and desist order is not, however, determinative of the application for injunctive relief. Section 8-12
authorizes a zoning enforcement officer to seek injunctive relief to restrain a violation of the zoning regulations. That statute provides that an official charged with enforcing the zoning regulations CT Page 5669 of a town "in addition to other remedies, may institute an action or proceeding to . . . restrain . . . such violation . . ." (emphasis supplied.) One of the remedies available to the zoning enforcement officer would, pursuant to 8-12, be pursuit of civil penalties for violation of the cease and desist order. Crabtree v. Coyle, 19 Conn. App. 208, n. 1 (1989). Instead, the application before the court is for injunctive relief, and the court concludes that the zoning enforcement officer established that the defendant is keeping a pig in a residential zone in which keeping a pig is not a permitted use unless the residential property is a three-acre farm.
In balancing the equities, the court finds that the need of the applicant to enforce applicable zoning regulations clearly outweighs the interest of the defendant in keeping a pig as a pet in violation of those provisions.
The application of the zoning enforcement officer is granted and the defendant is hereby ordered to refrain from keeping a pig at her property at 20 Redcoat Lane, Guilford. Failure to comply by July 24, 1992 will result in imposition of a civil fine in the amount of $250.00 for each day of noncompliance.
In summary, the defendant shall be and hereby is preliminarily enjoined from maintaining a pigsty or pig at her property at 20 Redcoat Lane after July 24, 1992. Fines in the aggregate of $500.00 per day will be imposed for each day of noncompliance pursuant to applicable law.