ROBERT BAUER *v.* WASTE MANAGEMENT
OF CONNECTICUT, INC.
(15359)

Borden, Norcott, Katz, Palmer and McDonald, Js.

Argued October 3—officially released December 31, 1996

*Edward F. Ryan*, pro hac vice, with whom were *Timothy S. Hollister* and, on the brief, *Joseph P. Williams*, for the appellant (defendant).

*Jeffrey B. Sienkiewicz*, with whom was *Michael S. McKenna*, for the appellee (substitute plaintiff).

NORCOTT, J. This appeal arises out of proceedings following our remand in *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 662 A.2d 1179 (1995). In *Bauer*, we upheld the validity of a New Milford zoning regulation limiting the maximum height of a landfill to ninety feet. Because the defendant con-

ceded that it had violated the regulation, we remanded the case for further proceedings on the plaintiff's claim for injunctive relief. In the present appeal, the defendant challenges the trial court's issuance of a permanent mandatory injunction ordering the defendant to remove all waste deposited at the landfill above the height of ninety feet. We affirm the judgment of the trial court.

The trial court's memorandum of decision, quoting extensively from *Bauer*, establishes the following facts. The plaintiff is the zoning enforcement officer for the town of New Milford (zoning enforcement officer).[1] The defendant, Waste Management of Connecticut, Inc. (Waste Management), owns and operates a solid waste landfill located in an industrial zone in New Milford. The landfill covers seventy acres of land and has been operating as a nonconforming use since 1971, when New Milford adopted zoning regulations prohibiting the operation of a landfill in an industrial zone.

In 1976, the department of environmental protection (DEP) issued a permit to Waste Management's predecessor for the disposal of solid waste on the landfill up to a height of ninety feet. Id., 226. In 1987, the DEP issued a modified permit to Waste Management, which extended the height limitation to 190 feet. Id., 227.

On November 14, 1989, the New Milford zoning commission (commission) amended its zoning regulations to impose a ninety foot height limitation on any landfill existing as a nonconforming use in an industrial zone in New Milford. Waste Management opposed the new regulation because it wanted to continue depositing waste on its landfill up to the 190 foot limitation contained in its DEP permit.

[1] This action was originally commenced by Robert Bauer in his capacity as zoning enforcement officer. Subsequently, Loretta Brickley was appointed the zoning enforcement officer and, on September 20, 1993, was substituted as the party plaintiff.

In December, 1989, Waste Management filed an administrative appeal challenging the commission's adoption of the height limitation on the grounds of preemption, waiver, nonconforming use and an unconstitutional taking.[2] The trial court bifurcated the preemption, waiver and nonconforming use claims from the taking claim. In February, 1992, the trial court, *Susco J.*, ruled in the commission's favor on the preemption, waiver and nonconforming use claims. The trial court then scheduled a hearing on the taking claim. Id., 228.

In August, 1992, before trial on the taking claim occurred, the zoning enforcement officer brought the present enforcement action seeking a temporary and permanent injunction to restrain Waste Management from continuing to deposit waste in violation of the ninety foot height limitation, and to order Waste Management to correct and abate its violation. In October, 1992, the trial court held a hearing on the claim for a temporary injunction. This hearing, however, was never concluded.[3]

From May 4 through May 6, 1993, a trial was held on Waste Management's taking claim together with the zoning enforcement officer's claim for a permanent injunction. On November 22, 1993, the trial court, *Susco, J.*, held that the regulation constituted a taking without just compensation in violation of the Connecticut con-

---

[2] In *Bauer*, this court initially stated that Waste Management did not plead or argue in the trial court that it had operated the landfill at a height of greater than ninety feet at the time the height restriction was enacted in 1989. Following Waste Management's motion for reconsideration of our decision, we amended our opinion and added the following footnote: "Although there is some evidence in the record that a portion of the landfill may have exceeded a height of ninety feet at the time of the enactment of the height limitation in 1989, Waste Management neither alleged nor sought to prove that this was the case, but rather relied on the DEP permit as the sole basis for its nonconforming use." *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 241 n.13.

[3] The record does not reveal the reason for not concluding this hearing.

stitution. The court denied the zoning enforcement officer's claim for injunctive relief because the regulation was invalid and ordered the commission to revoke the height limitation. In April, 1994, the trial court issued an articulation, holding that the zoning enforcement officer was estopped from enforcing the height limitation and that Waste Management's deposit of waste between 90 and 190 feet was the permissible intensification of a vested nonconforming use. Id., 228–29.

In the enforcement action, the zoning enforcement officer appealed to the Appellate Court from the judgment of the trial court on the claims of injunctive relief, estoppel, and permissible intensification of a vested nonconforming use. In the administrative appeal, the commission appealed from the trial court's judgment on the taking claim, and Waste Management cross appealed on the preemption and waiver claims. We transferred both appeals and the cross appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c) and consolidated the cases on appeal. On July 11, 1995, this court issued an opinion deciding both cases. We affirmed the trial court on the preemption and waiver claims, but reversed on the claims of an unconstitutional taking, estoppel, and permissible intensification of a nonconforming use. We remanded the enforcement action to the trial court for further proceedings to consider the zoning enforcement officer's claim for injunctive relief. We remanded the administrative appeal to the trial court with direction to render a judgment of dismissal. Id., 259.

On remand, Waste Management requested leave to amend its answer and special defenses to assert facts that had occurred since the original trial in May, 1993. Waste Management alleged, inter alia, that the town of New Milford contributed waste to the landfill above ninety feet and benefited financially from the deposit of waste at the landfill. These allegations formed the

basis of Waste Management's proposed special defenses of unclean hands and unjust enrichment. The trial court, *Pickett, J.*, denied Waste Management's request.

On September 19, 1995, the trial court, *Gill, J.*, issued a temporary injunction prohibiting Waste Management from depositing waste or other material above ninety feet and prohibiting the deposit of any waste at the landfill after September 29, 1995.

On November 7, 1995, following a seven day trial, the trial court, *Gill, J.*, granted the zoning enforcement officer's claim for injunctive relief and assessed a civil penalty against Waste Management. At the time of trial, Waste Management's landfill was 160 feet high at its peak elevation, 70 feet above the regulation's height limitation. Of the seventy acres that comprised the landfill, twenty-three acres contained waste at heights above ninety feet. Specifically, the trial court ordered Waste Management: (1) to refrain from depositing solid waste, fill and other material on the landfill above ninety feet; (2) to prepare a "clean closure plan" for the removal of all solid waste, fill and other material existing on the landfill above ninety feet; (3) to apply to the DEP and any other pertinent regulatory agencies for the permits necessary to remove all such solid waste, fill and other materials from the landfill; and (4) to pay a civil penalty in the amount of $89,200 for the period of March 31, 1993, through September 19, 1995. The court retained continuing jurisdiction over the case "to resolve any issues that may arise pending the DEP closure approval," and stated that it "will reopen the hearings and review appropriate remedies if clean closure is not approved." Waste Management appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, Waste Management does not challenge the prohibitory injunction restraining it from receiving or depositing any waste at the landfill, or the imposition of civil penalties. Waste Management's sole challenge is to the trial court's granting of a permanent mandatory injunction ordering Waste Management to remove all wastes and other material deposited above the height of ninety feet. In challenging this order, Waste Management claims that the trial court: (1) abused its discretion in denying Waste Management's request to amend its answer and therefore improperly excluded evidence of the zoning enforcement officer's allegedly inequitable conduct; (2) improperly concluded that Waste Management's violation of the height limitation was wilful; and (3) abused its discretion in ordering Waste Management to remove all waste deposited above the height of ninety feet. We disagree with each of these claims and, accordingly, affirm the judgment of the trial court.

I

Waste Management first claims that the trial court abused its discretion in refusing to allow Waste Management to amend its answer and special defenses. We disagree.

Whether to grant a request to amend the pleadings is a matter within the discretion of the trial court, and this court will rarely overturn the decision of the trial court. *Kelley* v. *Bonney*, 221 Conn. 549, 591, 606 A.2d 693 (1992); *Bielaska* v. *Waterford*, 196 Conn. 151, 154, 491 A.2d 1071 (1985); *Hanson Development Co.* v. *East Great Plains Shopping Center, Inc.*, 195 Conn. 60, 67, 485 A.2d 1296 (1985). "Judicial discretion . . . is always legal discretion, exercised according to the recognized principles of equity. . . . While its exercise will not ordinarily be interfered with on appeal to this court, reversal is required where the abuse is manifest or where injustice appears to have been done." (Citation

omitted; internal quotation marks omitted.) *Sturman* v. *Socha*, 191 Conn. 1, 7, 463 A.2d 527 (1983).

Waste Management argues that it should have been allowed to amend its answer and special defenses because this court's remand "for further proceedings" in *Bauer* entitled it to a new trial. The zoning enforcement officer counters that our remand did not explicitly grant a new trial and, therefore, that the proposed amendment was beyond the scope of the remand. Although we conclude that the scope of the remand permitted amendments to the pleadings bearing on injunctive relief, we hold that the trial court's refusal to allow the amendment was harmless.

A

We first consider whether the trial court correctly interpreted our mandate on remand. Well established principles govern further proceedings after a remand by this court. "In carrying out a mandate of this court, the trial court is limited to the specific direction of the mandate as interpreted in light of the opinion. . . . This is the guiding principle that the trial court must observe. . . . The trial court should examine the mandate and the opinion of the reviewing court and proceed in conformity with the views expressed therein. . . ." (Citations omitted; internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven*, 207 Conn. 308, 312, 541 A.2d 858 (1988); see *Wendland* v. *Ridgefield Construction Services, Inc.*, 190 Conn. 791, 794–95, 462 A.2d 1043 (1983); *State* v. *Avcollie*, 188 Conn. 626, 643, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *Nowell* v. *Nowell*, 163 Conn. 116, 121, 302 A.2d 260 (1972).

With these principles as a guide, we examine the language of the rescript in light of our opinion in *Bauer*. The rescript provides: "The judgment in [the administrative appeal] is reversed and the case is remanded with

direction to render judgment dismissing [Waste Management's] administrative appeal; the judgment in [the enforcement action] is reversed and the case is remanded for further proceedings in accordance with the preceding paragraph." *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 259. In the paragraph preceding the rescript, we stated: "Because we conclude that the regulation does not infringe on Waste Management's property rights as measured against its reasonable investment-backed expectations for use of its land, we conclude that the height limitation does not effect a taking of Waste Management's property in violation of the Connecticut constitution. Accordingly, because the height limitation is valid and Waste Management concedes that the landfill is in violation thereof, the enforcement action must be remanded for consideration of the zoning enforcement officer's claim for injunctive relief." Id.

Waste Management argues that this language entitled it to a new trial because "[a] remand for further proceedings without more permits the parties to raise new claims or defenses on all issues open on retrial." In support of this argument, Waste Management relies on the following three cases: *Beccia* v. *Waterbury*, 192 Conn. 127, 470 A.2d 1202 (1984), *State* v. *Darwin*, 161 Conn. 413, 288 A.2d 422 (1971), and *Purdy* v. *Watts*, 91 Conn. 214, 99 A. 496 (1916). These cases, however, are distinguishable from the present case. In *Beccia* v. *Waterbury*, supra, 129, we vacated the judgment of the trial court and remanded the case for further proceedings not inconsistent with the opinion. If a judgment is set aside on appeal, its effect is destroyed and the parties are in the same condition as before it was rendered. W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 345. In *State* v. *Darwin*, supra, 419, and *Purdy* v. *Watts*, supra, 215, we reversed the judgments of the lower courts and explicitly ordered new trials.

In *Bauer*, by contrast, we neither vacated the trial court's judgment nor explicitly ordered a new trial. We remanded the enforcement action to the trial court for the limited purpose of resolving the zoning enforcement officer's claim for injunctive relief in light of Waste Management's concession that it had violated the height limitation. The rescript and opinion reveal that the only issue left to be decided in the enforcement action was injunctive relief. The trial court had not reached the merits of this claim because it had determined that the height limitation was invalid. In the administrative appeal, all of the claims were decided against Waste Management and that case was ordered dismissed.

The scope of the remand was not so narrow, however, as to preclude relevant evidence on the issue of injunctive relief. "We have rejected efforts to construe our remand orders so narrowly as to prohibit a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand. . . . So long as these matters are not extraneous to the issues and purposes of the remand, they may be brought into the remand hearing." (Citation omitted.) *Cioffoletti v. Planning & Zoning Commission*, 220 Conn. 362, 369, 599 A.2d 9 (1991). In its proposed amendment, Waste Management sought to assert the defenses of unclean hands and unjust enrichment based on facts that occurred after the first trial in May, 1993. Whether a party is entitled to injunctive relief is determined by the situation that has developed at the time of trial, not by the situation that existed when the action was commenced. *Kyser v. Zoning Board of Appeals*, 155 Conn. 236, 255, 230 A.2d 595 (1967); *Edward Balf Co. v. East Granby*, 152 Conn. 319, 323, 207 A.2d 58 (1965); *Canepari v. Townshend*, 142 Conn. 477, 483, 115 A.2d 432 (1955). Certainly, new facts that have occurred since the original trial and that relate to the balance of

equities are relevant and material to the determination of injunctive relief. There was nothing in our remand in *Bauer* that prohibited amending the pleadings to assert such facts.

## B

Having concluded that the scope of our remand did not prohibit Waste Management's proposed amendment to its answer and special defenses, we next consider whether the trial court's denial of the amendment constituted harmful error so as to require reversal. We conclude that its action was harmless.

Waste Management sought to amend its answer to assert, inter alia, the defense of unclean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 492, 234 A.2d 825 (1967). Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply. *Boretz* v. *Segar*, 124 Conn. 320, 323–24, 199 A. 548 (1938).

Waste Management claims that its unclean hands defense would have established that the town knowingly contributed to the illegal deposit of waste and reaped financial benefits from those deposits. During the hearing on remand, Waste Management made the following offer of proof in support of this defense: (1) since 1993, the town's water pollution control authority deposited 3000 tons of sludge at the landfill, of which 2000 tons were deposited at a height above 90 feet; (2) from January, 1993, through August, 1995, the landfill accepted, without charge, 1285 tons of bulky waste from the town's recycling center; (3) in 1993, the town's mayor received permission to deposit, free of charge,

approximately 20 tons of municipal solid waste at the landfill; (4) in June, 1995, the town's mayor and health director requested the free disposal of 40,000 tons of street sweepings collected by the town's public works department; and (5) from January, 1993, through August, 1995, the town received statutory landfill royalties in the amount of $600,000 for all waste deposited at the landfill.[4] The trial court excluded this evidence. It found that the proposed evidence regarding the town's receipt of payments required by statute and receipt of free disposal services did not constitute unclean hands. It further found that the volumes of sludge and bulky waste deposited at the landfill were de minimis compared to the 1.5 million cubic yards of waste deposited by Waste Management in violation of the zoning regulation.

The trial court has broad discretion in determining the admissibility of evidence, and its rulings will not be disturbed on appeal absent a clear abuse of discretion. *State* v. *Boucino*, 199 Conn. 207, 225, 506 A.2d 125 (1986). We agree with the trial court that none of the evidence alleged in Waste Management's offer of proof constituted conduct that, if admitted, would rise to the level of unclean hands so as to preclude the court from

[4] These payments were made by Waste Management to the town pursuant to General Statutes § 22a-220b, which provides in relevant part: "The owner or operator of a solid waste land disposal facility shall pay to the municipality in which such facility is located fifty cents for each ton of solid waste that is received at such facility . . . ."

This evidence was also offered in support of Waste Management's proposed special defense of unjust enrichment. In its memorandum of decision, the trial court rejected Waste Management's argument that the town would be unjustly enriched if it were to keep these payments while the waste that generated the payments was being removed. The trial court reasoned that the purpose of the statutory payments is to compensate the host municipality in return for allowing solid waste to be stored within its borders. The trial court found that the town has been and will continue to be faced with problems relating to the landfill that the royalties were legislatively intended to address. We agree with the trial court.

rendering injunctive relief. We therefore conclude that the trial court's denial of the proposed amendment was harmless error.

## II

Waste Management next claims that the trial court improperly concluded that its violation of the height limitation was grave and wilful. We disagree.

A decision to grant or deny an injunction must be compatible with the equities in the case, which should take into account the gravity and willfulness of the violation, as well as the potential harm to the defendant. *Gelinas* v. *West Hartford*, 225 Conn. 575, 596, 626 A.2d 259 (1993). A wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct. *Dubay* v. *Irish*, 207 Conn. 518, 532–33, 542 A.2d 711 (1988); *Caraher* v. *Sears, Roebuck & Co.*, 124 Conn. 409, 415, 200 A. 324 (1938). Willfulness in violating a regulatory statute implies not so much malevolent design as action with knowledge that one's acts are proscribed or with careless disregard for their lawfulness or unlawfulness. *Mercado* v. *Brannan*, 173 F.2d 554, 555 (1st Cir.), cert. denied, 338 U.S. 820, 70 S. Ct. 65, 94 L. Ed. 497 (1949). What constitutes willfulness is a question of fact. *Gonier* v. *Chase Cos.*, 97 Conn. 46, 57, 115 A. 677 (1921); see *Planning & Zoning Commission* v. *Desrosier*, 15 Conn. App. 550, 560, 545 A.2d 597 (1988). A finding of fact will not be disturbed on appeal unless clearly erroneous. Practice Book § 4061; *First Bethel Associates* v. *Bethel*, 231 Conn. 731, 744, 651 A.2d 1279 (1995).

There is no dispute that in 1989, Waste Management knew that the regulation prohibited dumping above ninety feet. In fact, Waste Management challenged the regulation within two months of its adoption by the commission. The trial court found that Waste Management continued to deposit waste at the landfill through-

out the pendency of this litigation, and claimed it would never comply with the height limitation in the absence of a court order. Waste Management continued depositing waste at the facility even after this court upheld the regulation in *Bauer*. As a result, the peak height in areas of the landfill is presently 160 feet, 70 feet above the limit imposed by the regulation. Between 1993, when the appeal was taken from the judgment of the trial court, and September 19, 1995, when the trial court issued a temporary injunction prohibiting the further deposit of waste, Waste Management nearly tripled the amount of waste being deposited at the landfill on a yearly basis. In 1989, Waste Management dumped 190,494 tons of waste at the landfill, and in 1994, it dumped 581,832 tons, with a projected 573,200 tons in 1995. In total, Waste Management dumped an estimated 1.5 million cubic yards of waste in violation of the height limitation.

Furthermore, the trial court found that Waste Management "paid no heed to the ramifications of its own actions." Waste Management deposited waste above the height of ninety feet despite knowing that it risked having to remove that waste if the regulation were upheld on appeal. Waste Management cannot avoid the fact that its own actions of nearly doubling the height of the landfill during the pendency of these proceedings created the environmental catastrophe that it now claims is likely to occur upon removal of the waste above ninety feet. We conclude that there was ample evidence in the record to support the trial court's finding that Waste Management's violation of the regulation was grave and wilful.

Waste Management argues, nonetheless, that its conduct was lawful because it believed in good faith that the height limitation was unconstitutional and thus unenforceable. Even if we were to assume, without deciding, that Waste Management held such a good faith

belief, this belief did not entitle Waste Management to violate the regulation during the pendency of this case in the absence of a court order enjoining enforcement of the regulation. Although Waste Management filed an administrative appeal challenging the regulation's validity, the appeal did not operate to stay enforcement of the regulation. See General Statutes § 8-8 (g).[5] Furthermore, a zoning regulation is entitled to a presumption of validity. *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 258; *Pollio* v. *Planning Commission*, 232 Conn. 44, 49, 652 A.2d 1026 (1995). This presumption yields only when the party challenging the regulation establishes beyond a reasonable doubt that the regulation is invalid. *Pollio* v. *Planning Commission*, supra, 49. If we accepted Waste Management's argument that its conduct was lawful because it believed that the regulation was invalid, then any entity could ignore a zoning regulation until a court upheld the regulation. This would turn the presumption of a regulation's validity on its head. We reject this argument.[6]

Waste Management next argues that it was under no legal duty to comply with the height limitation once the trial court ruled that the regulation was unconstitutional and that the zoning enforcement officer was estopped from enforcing the height limitation. On the contrary,

[5] General Statutes § 8-8 (g) provides: "The appeal shall state the reasons on which it has been predicated and shall not stay proceedings on the decision appealed from. However, the court to which the appeal is returnable may grant a restraining order, on application, and after notice to the board and cause shown."

In its administrative appeal, Waste Management never sought or obtained an order to stay the effect of the zoning regulation establishing the ninety foot height limitation, as it had the opportunity to request pursuant to § 8-8 (g).

[6] In a similar vein, Waste Management argues that it was never obligated to stop dumping because the town never obtained a cease and desist order. We reject this argument for the reasons stated in the text accompanying this footnote.

the zoning enforcement officer's appeal from the judgment of the trial court automatically stayed enforcement of that judgment. See Practice Book § 4046;[7] *Preisner* v. *Aetna Casualty & Surety Co.*, 203 Conn. 407, 415, 525 A.2d 83 (1987). There was no basis in law, therefore, for Waste Management to believe that it could continue to ignore the height limitation during the pendency of the appeal.[8]

Waste Management next argues that its violation was not wilful because it relied in good faith on the advice of counsel. It states that counsel advised it that the regulation was unconstitutional and that there was only a 5 percent chance this court would uphold the regulation's validity on appeal. Waste Management cites two cases in support of its argument that good faith reliance on the advice of counsel is sufficient to avoid a finding of willfulness. See *Panter* v. *Marshall Field & Co.*, 646 F.2d 271 (7th Cir.), cert. denied, 454 U.S. 1092, 102 S. Ct. 658, 70 L. Ed. 2d 631 (1981); *Spirt* v. *Bechtel*, 232 F.2d 241 (2d Cir. 1956). These two cases are inapposite. First, they did not involve claims of wilful misconduct, but instead involved alleged violations of the business judgment rule. Second, in both cases, the defendants relied on the advice of counsel in making a bona fide and affirmative effort to comply with the law. In the present case, Waste Management consulted counsel in weighing the risks associated with depositing waste

[7] Practice Book § 4046 provides in relevant part: "In all actions, except where otherwise provided by statute or other law, proceedings to enforce or carry out the judgment shall be automatically stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause . . . ."

[8] Waste Management argues that it could not temporarily cease operations at the landfill without effectively surrendering its rights on appeal. According to Waste Management, had it voluntarily ceased operations during its 1993 appeal, it would have been required for environmental reasons to undertake a final closure of the facility. Even if we were to accept this argument, the trial court found that Waste Management continued to violate the height limitation after disposition on appeal.

above the height of ninety feet and chose to continue dumping in violation of the height limitation. We agree with the trial court that Waste Management's conduct did not militate against a finding of willfulness.

Waste Management's final argument does not merit much discussion. Waste Management argues that its violation was not wilful because it was operating under the terms of its DEP permit, issued pursuant to the Solid Waste Management Act, General Statutes § 22a-207 et seq. As we held in *Bauer*, neither the DEP permit nor the Solid Waste Management Act preempted the height limitation. *Bauer* v. *Waste Management of Connecticut, Inc.*, supra, 234 Conn. 232. The DEP permit expressly prohibited Waste Management from operating its landfill in contravention of local zoning regulations. Id., 236 n.10. Furthermore, the Solid Waste Management Act expressly provides that " 'nothing in this chapter [entitled Solid Waste Management] shall be construed to limit the right of any local governing body to regulate, through zoning, land usage for solid waste disposal.' " Id., 233. Having concluded that the DEP permit did not authorize Waste Management to violate the height limitation, we reject this final argument.

In sum, we conclude that there was ample evidence in the record for the trial court to conclude that Waste Management's violation of the height limitation was grave and wilful.

III

Waste Management's final claim is that the trial court abused its discretion in ordering the removal of waste deposited above the height of ninety feet, subject to appropriate regulatory approval. We disagree.

In an action brought by a zoning enforcement officer to enforce zoning regulations, the granting of injunctive

relief rests within the trial court's sound discretion. *Gelinas* v. *West Hartford*, supra, 225 Conn. 595–96. "Although this court will generally refrain from interfering with a trial court's exercise of discretion . . . discretion is to be exercised 'in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.' " (Citation omitted.) Id., 588. Waste Management claims that the trial court abused its discretion because: (1) there was no evidence of any harm to the town posed by the height of Waste Management's landfill; (2) the trial court failed to consider the harm to the public posed by enforcing the height limitation; and (3) the trial court improperly balanced the equities of the case. We reject each of these arguments and hold that the trial court did not abuse its discretion in issuing the permanent, mandatory injunction.

A

Waste Management first argues that there was no evidence in the record of any harm to the town. We are unpersuaded by this contention. The zoning enforcement officer sought injunctive relief pursuant to General Statutes § 8-12.[9] "In seeking an injunction pursuant to § 8-12, the town is relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law because § 8-12 by implication assumes that no adequate alternative remedy exists and

[9] General Statutes § 8-12 provides in relevant part: "Procedure when regulations are violated. If any building or structure has been erected, constructed, altered, converted or maintained, or any building, structure or land has been used, in violation of any provision of this chapter or of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain, correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent any illegal act, conduct, business or use in or about such premises. . . ."

that the injury was irreparable. . . . The town need prove only that the statutes or ordinances were violated." (Citation omitted.) *Gelinas* v. *West Hartford,* supra, 225 Conn. 588. Here, the trial court correctly held that the zoning enforcement officer need not prove irreparable harm in order to prevail in her claim for injunctive relief.

B

Waste Management next argues that the trial court failed to consider the harm to the public posed by removal of the waste deposited above the height of ninety feet. At trial on remand, Waste Management introduced expert testimony that 1.5 million cubic yards of waste would have to be removed from the landfill to bring it into compliance with the height limitation and DEP regulations governing side slopes. Several of Waste Management's experts testified that removal of this amount of waste could cause the following hazards: the release of friable asbestos, noxious odors and volatile organic compounds into the air; the discharge of leachate into the ground, which could result in water pollution; and fires. Indeed, one of its experts stated that an excavation of this magnitude was unprecedented, and others testified that it could not be done in an environmentally safe manner. On the other hand, the zoning enforcement officer's expert testified that removal of the 1.5 million cubic yards of waste could be accomplished if safeguards were put in place and carefully implemented.

The trial court did not credit the dire predictions of Waste Management's experts. It found their testimony to be biased because of their close ties to the company as consultants, employees or former employees. Nonetheless, the trial court did specifically consider the potential environmental harm posed by removal. It

stated that "by ordering Waste Management to apply to the DEP for a permit to conduct a 'clean closure' of the facility, the court is considering the potential for environmental harm and the effect of removal on the surrounding property owners and site workers. Thus, the potential environmental concerns as well as the public concerns raised by Waste Management will not be overlooked." The court then retained continuing jurisdiction over the case "to resolve any issues that may arise pending the DEP closure approval." The court stated that it would reopen the hearings and review appropriate remedies if clean closure was not approved.

On the basis of this record, we conclude that the trial court did consider the potential harm to the public and the environment posed by removal of the excess waste. The trial court recognized that the record before it regarding potential environmental hazards was inadequate and would be more fully developed after Waste Management prepared a clean closure plan and submitted that plan to the DEP. By stating that it would reopen hearings if the DEP did not approve Waste Management's plan, the trial court further recognized that removal might pose unsurmountable environmental hazards. "The Superior Court is a court of general jurisdiction that derives its power in civil matters from General Statutes § 52-1.[10] In the exercise of its equitable powers, a court necessarily has the authority to retain supervisory jurisdiction to assure compliance with its mandate." *Hilton* v. *New Haven*, 233 Conn. 701, 728, 661 A.2d 973 (1995). Given the broad discretion afforded a trial court in deciding whether to issue an injunction, especially in a complicated zoning case in which envi-

---

[10] General Statutes § 52-1 provides: "The superior court may administer legal and equitable rights and apply legal and equitable remedies in favor of either party in one and the same civil action so that legal and equitable rights of the parties may be enforced and protected in one action. Whenever there is any variance between the rules of equity and the rules of the common law in reference to the same matter, the rules of equity shall prevail."

ronmental hazards are claimed, we find nothing improper in the court's determination that an adequate assessment of the environmental risks involves the input of the appropriate regulatory agencies charged with protection of public health and the environment. Far from abdicating its discretion, as Waste Management claims, the trial court thoroughly reviewed the claims and facts, and it fashioned a thoughtful, careful remedy for a difficult problem.

## C

Waste Management's final argument is that the trial court incorrectly balanced the equities of this case because the harms posed by removal of the waste deposited above the height of ninety feet outweigh any harms posed by the violation of the height limitation. Specifically, Waste Management argues that: (1) there is no evidence of harm to the town posed by the present height of the landfill; (2) the trial court ignored the harms to the public and to Waste Management posed by removal of the waste; (3) the trial court delegated the determination of the feasibility of removal to the DEP; and (4) the trial court ignored evidence of Waste Management's good faith. We disagree.

The trial court found that the following factors weighed in favor of granting injunctive relief: the plaintiff was the zoning enforcement officer seeking an injunction to enforce a zoning regulation which Waste Management admitted to have violated; irreparable harm is assumed and need not be proved where a zoning enforcement officer seeks to enforce a zoning regulation; an injunction is the most effective means of enforcing zoning regulations; allowing the landfill to remain at its present height would reward and ratify Waste Management's violation and undermine the zoning enforcement officer's authority; Waste Management's violation of the height limitation was grave and wilful;

Waste Management deposited 1.5 million cubic yards of waste in violation of the height limitation; the height of the landfill is now 160 feet at its peak and 70 feet above the height limitation; and the zoning enforcement officer's expert testified that removal could be completed in an environmentally sound manner. In addition, the trial court rejected Waste Management's proffer of evidence regarding the conduct of the town and concluded that such evidence did not rise to the level of unclean hands so as to preclude the award of injunctive relief. The trial court also rejected Waste Management's claim of unjust enrichment because the purpose of the statutory royalty payments was to compensate the host municipality in return for allowing the storage of solid waste within its borders.

The trial court considered but rejected the following factors weighing against the granting of injunctive relief: it did not credit the testimony of Waste Management's experts that removal would create an environmental catastrophe; it rejected Waste Management's claim that the cost of removal, estimated at about $105 million, was too high because Waste Management received $50 million for the illegal deposit of waste and Waste Management's parent company receives revenues of approximately $10 billion annually; and it rejected Waste Management's claims of good faith compliance with the law. In sum, the trial court found that Waste Management enjoyed the benefits of its illegal dumping and should not now be relieved of the consequences of its actions. In light of these factors, we conclude that the trial court properly determined that the equities lie in favor of granting the permanent mandatory injunction.

We hold, therefore, that the trial court properly exercised its discretion in determining that the zoning enforcement officer was entitled to injunctive relief and

in fashioning its order for permanent mandatory injunctive relief.

The judgment is affirmed.

In this opinion the other justices concurred.