[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE SPECIAL DEFENSES
The plaintiff, Pratt Whitney, has moved to strike the defendants' First through Fifteenth Special Defenses to all counts and Second, Third and Fourth Special Defenses to the Second, Third and Fourth Counts of the Complaint in this action in which the plaintiff has alleged, inter alia, that the defendants misappropriated the plaintiffs trade secrets by unlawfully acquiring the plaintiffs design drawings for aircraft engine parts.
"The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, CT Page 2021 nonetheless, that the plaintiff has no cause of action. Practice Book 164." Grant v. Bassman, 221 Conn. 465, 472, 473,604 A.2d 814 (1992). The defendants contend in the First Special Defense
to all counts that the plaintiff failed to take reasonable steps to preserve the proprietary nature of the parts drawings. The defendants also contend that the plaintiff offered for sale and distributed the parts drawing (Fourth Special Defense), disclosed its trade secrets through voluntary sale of the parts (FifthSpecial Defense), lost its trade secrets to the public domain (Sixth Special Defense) or developed the confidential information through government funding (Seventh Special Defense).
" "`A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be a formula for a chemical compound . . . or a list of customers.' Restatement, 4 Torts 757, comment b; Allen Mfg Co. v. Loika,
[145 Conn. 509, 516, 144 A.2d 306 (1958)]." Town Country House Homes Service, Inc. v. Evans, 150 Conn. 314, 318, 189 A.2d 390
(1963). Although it is not essential that the proprietor have exclusive possession of the information. "a substantial element of secrecy must exist, to the extent that there would be difficulty in acquiring the information except by the use of improper means." Id., 319. . . . The factors used to determine whether given information is a trade secret include the extent to which the information is known outside the business and by employees and others involved in the business, the measures taken by the employer to guard the secrecy of the information, the information's value to the employer and to competitors, the resources the employer expends in developing the information, and the ease or difficulty with which the information could be properly acquired or duplicated by others. Id., 319; 4 Restatement, Torts 757, comment B." Robert S. Weiss Associates,Inc. v. Wiederlight, 208 Conn. 525, 538, 546 A.2d 216 (1988).
Based on the foregoing, the plaintiff will have to prove that it took efforts to guard the secrecy of the alleged trade secrets. The aforementioned special defenses allege, essentially, that the plaintiff failed to take such efforts. Perhaps an abundance of caution has caused the defendants to undertake the burden of disproving that which the plaintiff must prove to establish its case. However, since the special defenses fail to allege facts inconsistent with those alleged in the complaint, they are not proper special defenses and are hereby ordered CT Page 2022 stricken.
The Second Special Defense alleges that Turbine Kinetics parts "were primarily developed through reverse and independent engineering." In the Third Special Defense the defendants allege that Turbine Kinetics parts "could have been developed entirely through reverse and independent engineering." The mere possibility of reverse engineering is not a defense to a misappropriation of a trade secret. ILG Industries, Inc. v.Scott, 49 Ill.2d 88. 278 N.E.2d 393 (1971): Apollo Techs. Corp.v. Centrosphere Indus. Corp., 805 F. Sup. 1157. 1197-98 n. 53 (D. N.J. 1992). Therefore. the Third Special Defense is ordered stricken. The plaintiff concedes that if the defendants developed the parts in question "primarily" by reverse engineering then its damages would be limited to some "head start" period. Nevertheless. the plaintiff seeks to strike the Second SpecialDefense because it asserts a defense which would merely limit, and not completely defeat the plaintiff's claim. Whether the defendants assert that the parts were produced completely or primarily from reverse engineering, the defense states facts which are inconsistent with the claims of the plaintiff's complaint and, therefore, should not be stricken.
In the Ninth Special Defense the defendants assert that they were not in privity with the plaintiff and, therefore, had no obligation to protect the proprietary information contained in the plaintiffs drawings. They have cited no law to support this defense, which appears to be based on a mischaracterization of the allegations of the complaint. The plaintiff is not alleging that the defendants breached a contractual obligation to protect Pratt Whitney's trade secrets, it is alleging that the defendants stole those secrets. Such a claim clearly requires no privity. The Ninth Special Defense is hereby ordered stricken.
In the Eighth Special Defense the Defendants allege that the plaintiffs claims are barred because the requested relief would have the effect of eliminating competition in the manufacture and sale of certain parts. The case cited by the defendants for the proposition that" anti-competition has been used as an affirmative defense" (Defendants' Memorandum in Opposition to Motion to Strike, p. 9), Boeing Co. v. Sierracin Corp,738 P.2d 665, 676 (Wash. 1987), does not support that proposition. InBoeing Co. the plaintiff sued for misappropriation of trade secrets and the defendant filed a counterclaim under Washington's state antitrust-unfair trade practice statute. The Supreme Court CT Page 2023 of Washington held that the defendant had not proved the necessary elements of an antitrust violation. The Eighth SpecialDefense does not allege a violation of the Connecticut Antitrust Act (§ 35-24 et seq.). Instead it asserts, essentially, that the defendants could misappropriate the plaintiffs trade secrets without any penalty as long as such misappropriation was the only way in which the defendants could compete with the plaintiff. For the foregoing reasons the Eighth Special Defense is ordered stricken.
The Twelfth Special Defense alleges that plaintiffs claims are made in bad faith with the objective of driving repair parts manufacturers out of the market. As with the Eighth Special Defense, the plaintiff's motivation in bringing the action will not defeat its claim for misappropriation of trade secrets absent some connection between the claimed improper motivation and an antitrust violation. Since the Twelfth Special Defense alleges no such violation, that special defense is ordered stricken.
The Thirteenth Special Defense alleges that the plaintiff has unclean hands. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. Collens v. New Canaan WaterCo., 155 Conn. 477, 492, 234 A.2d 825 (1967)." Bauer v. WasteManagement of Connecticut, 239 Conn. 515, 525, 686 A.2d 481
(1996). Therefore, insofar as any portion of the Complaint in this case seeks equitable relief the Thirteenth Special Defense
should not be stricken.
The Tenth Special Defense states that the Complaint fails to state a claim upon which relief can be granted. This is not a proper special defense because of its lack of factual assertions consistent with the allegations of the Complaint but showing that notwithstanding the Complaint's allegations, there is no cause of action. See Aetna Casualty Surety Co. v. Torrado, No. CV 89 9390, 1992 WL 329290. at *1. The Tenth Special Defense is ordered stricken.
The defendants assert in the Eleventh Special Defense that the Complaint fails to state a claim upon which relief may be granted because each count is premised upon Pratt Whitney's proprietary legend, which permits use of otherwise proprietary information obtained "from another source" and Turbine Kinetics obtained Pratt Whitney's drawings from another source. If that CT Page 2024 other source was theft or misappropriation, then this special defense clearly does not set forth a defense to the Complaint. However, as plead, the defense would permit the defendants to prove that they obtained the information through legitimate sources other than theft. Therefore, the special defense should not be stricken. The defendants' attorneys are under a duty to plead in good faith. Therefore, if, as the plaintiff contends, this defense is intended to assert that the "from another source" language in the legend permits the defendants to obtain parts drawings through bribery or theft, it cannot stand and should be withdrawn. Judge Corradino has already commented that such a position is "difficult to accept." The undersigned realizes that I am not bound to follow Judge Corradino's ruling However, I agree with Judge Corradino. The argument that the language in the legend immunizes the defendants from damage claims for theft or bribery is impossible to accept.
The Second Special Defense to the Second, Third and Fourth Counts states that the plaintiffs unfair competition claims are based solely on allegations of misappropriation of trade secrets under state law and therefore, are preempted by U.S. Constitution, article I § 8. cl. 8, which allocated the patent power to Congress. The defendants have not contested the Motion to Strike with respect to this special defense and it is ordered stricken.
In the Third Special Defense to the Second, Third and Fourth Counts, the defendants contend that the plaintiffs unfair competition claims are preempted by the Connecticut Uniform Trade Secrets Act, Connecticut General Statutes §§ 35-50 — 35-38. The question of preemption here is dependent on facts not contained in the pleadings and, therefore, this special defense should not be stricken.
The Fourteenth and Fifteenth Special Defenses state that the plaintiff's claims are barred as to the individual defendants because the plaintiff dealt with Turbine Kinetics as a corporate entity during the relevant time period. The individual defendants would be liable to the plaintiff whether or not they were acting through a corporate entity. "It is black letter law that an officer of a corporation who commits a tort is personally liable to the victim regardless of whether the corporation itself is liable.[20] Donsco, Inc. v. Casper Corporation, 587 F.2d 602,606 (3d Cir. 1978); Scribner v. O'Brien, Inc., 169 Conn. 389, 404363 A.2d 160 (1975); First National Bank Trust Co. v. Manning,
CT Page 2025116 Conn. 335, 340, 164 A. 881 (1933): Semple v. Morganstern,97 Conn. 402, 404, 116 A. 906 (1922); H. Henn J. Alexander, Laws of Corporations (3d Ed. 1983) 230; 19 Am.Jur.2d, Corporations 1882. The same rule would impose personal liability on a shareholder as well. Wyatt v. Union Mortgage Co., 24 Cal.3d 773,785, 598 P.2d 45, 157 Cal.Rptr. 392 (1979); 13A W. Fletcher, Cyclopedia of the Law of Private Corporations (Perm. Ed. 1985) 6214." Kilduff v. Adams, Inc., 219 Conn. 314, 331, 332,593 A.2d 478(1991). For the foregoing reasons the Fourteenth and FifteenthSpecial Defenses are ordered stricken.
By the court,
Aurigemma, J.