[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the Court on a Motion for Temporary Injunction filed by the plaintiff, seeking a court order enjoining the defendants from communicating with the plaintiff's former auditor.
 FACTS
On January 30, The Scotts Company ("Scotts") purchased Earthgro, Inc. ("Earthgro"), from Warburg, Pincus Ventures, L.P., Paul and Timothy Sellew, Henry McInerney, Joseph Mahler, Dale Dupuis and certain minority shareholders (collectively referred to herein as "the former owners and officers"). The purchase was effectuated pursuant to a Stock Purchase Agreement, dated January 30, 1998 (the "Stock Purchase Agreement"). Prior to the sale of Earthgro to Scotts, Ernst Young, L.L.P. ("EY"), served as Earthgro's independent auditor, auditing Earthgro's financial statements for the fiscal year ending 1997. During the audit, EY received and discussed Earthgro's financial and business operations with the former owners and officers, including Joseph Mabler, Earthgro's Chief Financial Officer at the time. Upon acquisition of Earthgro, Scotts terminated the services of EY. Accordingly, EY has provided no accounting services to Earthgro subsequent to Scotts' acquisition.
The Stock Purchase Agreement contained a covenant by Scotts that allowed the former owners and officers "reasonable access to" Earthgro's properties, books, records, employees and auditors to the extent necessary to permit Sellers to determine any matter relating to its rights and obligations thereunder or to any period ending on or before the Closing Date," which was February 12, 1998 (Stock Purchase Agreement § 6.01) (herein the "access covenant"). The access covenant expired on the second anniversary of the closing date, February 12, 2000; (Stock Purchase Agreement § 11.01).
On February 5, 1999, Scotts asserted claims that Earthgro's assets had been overvalued and its liabilities had been undervalued in the financial CT Page 9173 statements and other information disclosed by Earthgro to Scotts in connection with Scotts' due-diligence examination of Earthgro prior to its purchase of Earthgro. At that time, Roger Netzer of the law firm of Willkie Farr Gallagher (Willkie Farr), counsel for the former owners and officers, along with Joseph Mahler, contacted EY to discuss Scotts' claims. These discussions necessarily implicated the financial statements audited by EY. Those discussions were conducted during the term of and pursuant to the access covenant.
In January 2000, Scotts and Earthgro commenced an action in Ohio against the former owners and officers, contending that the former owners and officers breached a number of warranties in the Stock Purchase Agreement by misrepresenting Earthgro's financial status. In November 2000, the Ohio action was stayed pending the submission of the matter to arbitration pursuant to the terms of the Stock Purchase Agreement. The arbitration is currently'-pending before an arbitration panel in New York, although it too was stayed on May 29, 2001, per order of a Pennsylvania bankruptcy court due to its insolvency proceedings involving the insurer of Warburg, Pincus Ventures, L.P.
During the course of the arbitration, prior to a mediation session which had been scheduled for May 15, 2001, the mediator requested by letter dated April 20, 2001, that EY provide its work papers and other documents related to Earthgro to Willkie Farr, counsel for the former owners and officers. No party to the arbitration objected to this request, and EY complied with the request on April 24, 2001. Moreover, when Scotts thereafter sought farther discovery of EY documents, Scotts sought these documents by letter dated May 8, 2001, to Willkie Farr, requesting that Willkie Farr secure the information sought and apprize Scotts when the documents were to be provided and available for review. The mediator also asked Netzer to invite EY to the mediation session, and Netzer thereafter notified Scotts' in-house counsel, David Aronowitz, that EY would be attending.
At the mediation session, Aronowitz objected for the first time to EY's unilateral communications with the former owners and officers of Earthgro and their counsel Wilkie Farr. By letter to EY dated May 31, 2001, Earthgro requested that EY cease any discussions with former owners and officers of Earthgro. On June 4, 2001, Aronowitz, Netzer and Patricia McGovern, general counsel for EY, conferenced to discuss EY's participation in the arbitration. By letter to Earthgro dated June 5, 2001, EY voiced its position that it did not believe that a successor entity could unilaterally block those who formerly owned and managed Earthgro from obtaining information to which they had access during their previous ownership and management and that it had theretofore understood Scotts' views as being consistent with such position. EY farther stated CT Page 9174 that it had disclosed relevant work papers in connection with the mediation with the consent of both parties and that as such it did not believe that any information remained confidential as between the parties. On June 8, 2001, Earthgro responded by filing the present application for a temporary injunction.
"The principal purpose of a temporary injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." (Internal quotation marks omitted.)Clinton v. Middlesex Mutual Assurance Co., 37 Conn. App. 269, 270,655 A.2d 814 (1995). The requirements for a temporary injunction are: (1) the plaintiff lacks an adequate remedy at law; (2) the plaintiff will suffer irreparable harm absent an injunction; (3) the plaintiff is likely to prevail on the merits; and (4) the balance of the equities favors an injunction. See Waterbury Teachers Assn. v. Freedom of InformationCommission, 230 Conn. 441, 446, 645 A.2d 978 (1994); Connecticut Assn. ofClinical Laboratories v. Connecticut Blue Cross, Inc., 31 Conn. Sup. 110,113, 324 A.2d 288 (1973). The trial court is afforded broad discretion in deciding whether to issue an injunction. Bauer v. Waste Management ofConnecticut, Inc., 239 Conn. 515, 534, 686 A.2d 481 (1996).
Earthgro, now owned by Scotts, seeks a temporary injunction to preventing EY from disclosing to the former owners and officers information obtained by EY in connection with the provision of auditing services to Earthgro during the time it was controlled by the former owners and officers. Earthgro asserts the confidentiality of the information concerning Earthgro's financial status communicated by the former owners and officers to EY, citing General Statutes § 20-281j, which provides in relevant part: "Except by permission of the client. a licensee . . . shall not voluntarily disclose information communicated to him by the client relating to and in connection with services rendered to the client by the licensee in the practice of public accountancy. Such information shall be deemed confidential, provided that nothing herein shall be construed . . . as prohibiting disclosures in court proceedings. . . ."
EY objects to the granting of a temporary injunction, arguing that the information is not confidential as to the former owners and officers, who were the persons who communicated such information to EY and were therefore already privy to the information not only at the time EY provided the auditing services but also during the 2-year period following the purchase of Earthgro's stock by Scott's, pursuant to the access covenant (§ 6.01 of the Stock Purchase Agreement). The defendants further argue that Earthgro has not met its burden of proving the necessary requirements for obtaining a temporary injunction, namely, that Earthgro has not shown (1) irreparable harm, (2) it is likely to prevail CT Page 9175 on the merits, and (3) the balance of equities tip in favor of an injunction. The court agrees.
Earthgro has not established that it will be irreparably harmed in the absence of injunctive relief. The source of much of the information Scott's claims to be confidential is the former owners and officers of Earthgro. Scott's cannot be irreparably harmed by the disclosure of information to the original source of the information. The access covenant and Scott's subsequent interjection of Wilkie Farr into its discovery process has made the former owners and officers privy to the information, such that the information is no longer confidential as to the defendants. Finally, the information that Earthgro claims is "confidential" appears to have already been produced to the former owners and officers, as EY specifically represents that the entire contents of its work papers have all been turned over in the arbitration. Earthgro provides no evidence that any undisclosed confidential information remains in the possession of EY. Moreover, counsel for the former owners and officers has attested that, in light of the dispute over their communications with EY and the jurisdiction of the arbitration panel over discovery and evidence to be offered in the course of arbitration, the former owners and officers will cease communications with EY. In light of the fact that Earthgro has not established that any confidential information has yet to be disclosed, and in light of the voluntary agreement of the former owners and officers to preserve the status quo by not communicating with EY pending resolution of the issue by the arbitration panel, it appears futile for this court to grant a temporary injunction. In short, Earthgro has not met its burden of establishing that it will suffer harm unless the court grants injunctive relief.
Moreover, Earthgro has not shown that it is likely to prevail on the merits. The court certainly agrees with Earthgro that an accountant owes a duty of confidentiality to its client. General Statutes § 20-281j;Elm City Cheese Co. v. Federico, 251 Conn. 59, 85-86, 752 A.2d 1037
(1999). It is also not at issue that, when control of an entity passes to new management, the authority to assert and waive the right of confidentiality passes as well, and, therefore, Earthgro's new owner, Scotts, may properly assert Earthgro's confidentiality rights. This principle has been stated in the context of the authority of new corporate management to assert or waive the attorney-client privilege as to communications by former officers and directors. See, e.g., MedcomHolding Co. v. Baxter Travenol Laboratories, 689 F. Sup. 841, 842 (N.D. Ill. 1988).
Notwithstanding Earthgro's new management's authority to assert Earthgro's confidentiality rights, however, Earthgro has not established that the information, the disclosure of which it seeks to prevent, can be CT Page 9176 considered "confidential," at least as to the former owners and officers to whom it seeks to prevent disclosure. Prior to the sale of Earthgro, the former owners and officers were already privy to this information and, in fact, were the ones who supplied the information concerning Earthgro's business operations and financial status to EY in order for EY to perform its audit. In addition, Mahler, Earthgro's former chief financial officer, along with Netzer, the former owners and officers' attorney, sought and discussed the information with EY in February 1999. As Earthgro admits, § 6.01 of the Stock Purchase Agreement specifically authorized on that date the former owners and officers such access to their auditor. Netzer attests that the information discussed necessarily was information to which Mabler had already been privy based upon his position as chief financial officer at the time EY provided auditing services. Thus, once the former owners and officers legally and legitimately obtained the information, first prior to the sale of Earthgro as the then current owners and officers of Earthgro, later pursuant to the access covenant of the Stock Purchase Agreement, later still pursuant to Scott's implicit consent through its request of Wilkie Farr, and finally through disclosure in the arbitration proceedings, the information cannot and does not suddenly regain confidentiality vis-a-vis the former owners and officers.
Even if, and to the extent that, the information Earthgro seeks to conceal was confidential vis-a-vis the former owners and officers at some time, and Earthgro has not proved that it was, Earthgro waived its confidentiality rights when it directed EY to disclose information to Willkie Farr and failed to object to the disclosure ordered by the arbitrator. To analogize to the confidentiality of attorney-client communications, "[a] client may waive a privilege by voluntary disclosure to a third party; the disclosure breaches the confidentiality of the attorney-client relationship and, therefore, waives the privilege."Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., supra,689 F. Sup. 844; see also State v. Turner, 252 Conn. 714, 733,751 A.2d 372 (2000) ("voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege").
As to the final prong, Earthgro has not established that the equities weigh in favor of granting it injunctive relief. Earthgro has known for several years that EY, upon consultation with the former owners and officers, has provided information to the former owners and officers, and Earthgro never objected nor asserted the confidentiality of the information. Moreover, as discussed above, Earthgro has consented to the disclosure of the work papers already and had previously permitted access to the information under the Stock Purchase Agreement. Finally, the plaintiff has placed in issue in its Ohio action and in the arbitration the financial information concerning Earthgro which EY obtained from the CT Page 9177 former owners and officers, and EY has been disclosed as a material witness by the former owners and officers. Earthgro, having placed this information in issue, is hard pressed now to assert its confidentiality.
For the foregoing reasons, Earthgro has not met its burden of establishing the requirements for a temporary injunction. Therefore, Earthgro's application for a temporary injunction is denied.
Bryant, J.